# SEALED

DAVID B. BARLOW, United States Attorney (#13117)
ADAM S. ELGGREN, Assistant United States Attorney (#11064)
KARIN M. FOJTIK, Assistant United States Attorney (#7527)
Attorneys for the United States of America
185 S. State Street, Ste. 300 • Salt Lake City, Utah 84111
Telephone:  (801) 524-5682 • Facsimile:  (801) 325-3387
e-mail: adam.elggren@usdoj.gov

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, NORTHERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **S E A L E D** |
| Plaintiff, | | **I N D I C T M E N T** |
| | : | |
| vs. | : | VIOLS. 18 U.S.C. §1832, THEFT OF TRADE SECRETS; |
| JANICE KUANG CAPENER, | : | 18 U.S.C. §1343, WIRE FRAUD; |
| LUO JUN, | | 18 U.S.C. §1349, CONSPIRACY |
| SUNHILLS INTERNATIONAL, LLC, and | : | TO COMMIT WIRE FRAUD. |
| ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD., | : | |
| Defendants. | : | |

Case: 1:12-cr-00027
Assigned To : Benson, Dee
Assign. Date : 04/25/2012
Description: USA v.

---

The Grand Jury Charges:

## BACKGROUND

At all times relevant to this indictment:

1.     JANICE KUANG CAPENER was a citizen of the People's Republic of China, and a lawful permanent resident of the United States.  She had attended college in Salt Lake City, Utah, and married an American citizen.  She was fluent in both English and Mandarin Chinese.  CAPENER was employed by Orbit Irrigation Products, Inc. of North Salt Lake, Utah from about June 16, 2003 until about November 15, 2009. From about March 14, 2005 until about May 13, 2009, when she was notified of her termination, CAPENER worked for Orbit running the company's manufacturing plant in Ningbo, Zhejiang Province, China. Thereafter, she was a paid consultant for the company until her termination was finalized that November.

2.     LUO JUN was a citizen of the People's Republic of China and the chief executive officer and owner of ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD., a manufacturer of irrigation equipment located in Taizhou, Zhejiang Province, China.

3.     C. C., an individual whose full name is known to the Grand Jury, was a Utah resident and acquaintance of CAPENER's who, beginning in about November of 2009, provided sales and consulting services to CAPENER and

-2-

SUNHILLS.  He became National Sales Manager for SUNHILLS and CAPENER from about May 15, 2010 to about July of 2010.   C. C. was a co-conspirator in the defendants' attempts to defraud Orbit until he voluntarily left the conspiracy in July 2010.

4.     Orbit Irrigation Products, Inc., (Orbit) was a sprinkler and irrigation company headquartered in North Salt Lake, Utah.  It was in the business of producing, marketing, and distributing sprinkler and irrigation products.  It marketed more than 2,000 products in more than 40 countries.

5.     SUNHILLS INTERNATIONAL, LLC (SUNHILLS) was a company established by CAPENER in November of 2009 to sell sprinkler and irrigation products in direct competition with Orbit, her former employer.  SUNHILLS was incorporated in California on behalf of CAPENER by a person whose initials are R. P., in order to hide CAPENER's involvement in the company from Orbit.

6.     ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD. (HONGCHEN) was a Chinese manufacturer of irrigation equipment that had a contractual relationship with Orbit to manufacture some of Orbit's products beginning in about 2005.  From about July 2009, HONGCHEN took steps to bypass Orbit and begin marketing products to U.S. retailers through CAPENER or

SUNHILLS.  HONGCHEN's parent company was Taizhou Dongfang Light

Decorations Co., LTD.

7.     Augusta Products, LLC, (Augusta) was a company formed by CAPENER in

Utah in April of 2009.  CAPENER initially formed Augusta to compete with

Orbit, and used Augusta resources in furthering a scheme to defraud Orbit.

Trade Secret Information

8.     Over the course of its more than 40 years in business, Orbit has developed

information that it considers to be proprietary, and which it has taken steps to keep

secret from competitors and the public.  Such information includes product

research and schematics, purchasing costs, customer lists, and pricing information.

At issue in this Indictment are the latter two categories: customer and pricing

information (collectively, the "Trade Secrets").  These Trade Secrets are valuable

in that they give Orbit a competitive advantage in the marketplace by allowing

Orbit to identify its top customers, and to negotiate favorable prices with suppliers

and customers.

9.     Orbit has invested a substantial amount of capital and employee hours in

developing the Trade Secrets.  It stores this data on protected servers, which

require a user name and password to access.  Access is typically granted only to

-4-

employees and officers of the company. To access some particularly sensitive

Trade Secret data, higher-level clearance is required. As an employee of Orbit,

CAPENER was authorized to access some of the Trade Secret data for use in her

capacity as an employee and for purposes of furthering the interests of Orbit.

Orbit did not grant CAPENER access to some of the Trade Secret data.

10.     Orbit requires all employees to sign a document acknowledging that they

will abide by the policies in the Orbit Associate Manual, which includes a

Confidentiality section requiring the employee not to disseminate or disclose

confidential information to outside or unauthorized parties. CAPENER signed

such a document on December 13, 2004. On May 2, 2005, Capener signed an

additional agreement which further defined Orbit's proprietary information and

required her to protect this information and prevent others from using it. This

agreement also contained a "non-compete clause" prohibiting activity in conflict

with Orbit's business goals while an employee, and prohibiting competing with, or

working for a competitor of, Orbit for a period of 18 months following termination

of employment.

11.     During her employment with Orbit, CAPENER was placed in charge of

operations at an Orbit factory in Ningbo, Zhejiang Province, China. During the

course of her work there, CAPENER seldom accessed the company's intranet, stored on servers in the United States, to obtain sales or pricing data, although she routinely accessed the intranet to obtain personnel information.  However, on about May 13, 2009, the day she was informed her employment would be terminated, CAPENER accessed the Orbit intranet and downloaded substantial amounts of sales and pricing information for her own use, and not for Orbit's purposes.

<u>COUNTS 1-5</u>
(18 U.S.C. §1832, Theft of Trade Secrets)

12.    The Grand Jury hereby incorporates and realleges paragraphs 1-11 above.

13.    On or about May 13, 2009, in the Northern Division of the District of Utah and elsewhere,

JANICE KUANG CAPENER,

defendant herein, with the intent to convert a trade secret that is related to and included in a product that is produced for and placed in interstate and foreign commerce, to the economic benefit of a person other than the owner thereof, and intending and knowing that the offense will injure any owner of that trade secret, knowingly, and without authorization, copied, duplicated, downloaded, uploaded,

-6-

transmitted, communicated and conveyed such information, to wit: defendant

JANICE KUANG CAPENER without authorization, did copy, duplicate,

download, and upload information as described below from the secure company

databases of Orbit; which information was trade secret information as defined by

18 U.S.C. §1839(3) relating to customers, pricing, and sales, of sprinkler and

irrigation products made for and placed in interstate and foreign commerce; with

the purpose that the information be used by herself, her companies, and others for

the benefit of herself, her companies, and others, and to the economic detriment of

Orbit;

| COUNT | TRADE SECRET INFORMATION |
|-------|--------------------------|
| 1 | "Orbit Level One Sales" report "Displaying Top 25 Accounts" reflecting sales data from Orbit's 25 best customers for the years 2008 and 2009. |
| 2 | Orbit master product list describing all of Orbit's products (as of the date accessed) and information including quantity forecasts, vendors names, and costs, among other information |
| 3 | "Level One Sales Report" for Orbit customer Home Depot, reflecting sales data for 2008 and 2009 (through May 11, 2009) |
| 4 | "Level One Sales Report" for Orbit customer Lowe's, reflecting sales data for 2008 and 2009 (through May 11, 2009) |
| 5 | "Level One Sales Report" for Orbit customer Target Corporation, reflecting sales data for 2008 and 2009 (through May 11, 2009) |

all in violation of 18 U.S.C. §1832.

## COUNT 6
(18 U.S.C. §1349, Conspiracy to Commit Wire Fraud)

14.    The Grand Jury hereby incorporates and realleges paragraphs 1-11 above.

15.    Beginning on or about an exact date unknown to the Grand Jury, but not

later than about July 2009, and continuing to at least about July of 2010, in the

Northern Division of the District of Utah and elsewhere,

JANICE KUANG CAPENER,
LUO JUN,
SUNHILLS INTERNATIONAL, LLC, and
ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD.,

defendants herein, did combine, conspire, confederate and agree with each other

and with others known and unknown to commit the following offense:

having devised and intending to devise a scheme and artifice to defraud, and for

obtaining money and property by means of false and fraudulent pretenses, to wit:

the enrichment of the defendants, their associates, and related companies from the

sale of goods to customers of Orbit at prices well below Orbit's prices and set

using Orbit's illegally-possessed, proprietary pricing information, for the purpose

of executing such scheme and artifice did knowingly transmit and cause to be

-8-

transmitted by means of wire communication in interstate commerce writings, signs, signals and sounds:

### A. THE SCHEME AND ARTIFICE TO DEFRAUD

16.     The purpose of the scheme and artifice was to enrich the defendants and related companies by producing, marketing and selling sprinkler and irrigation products – in some instances, the exact products manufactured for Orbit – to customers of Orbit at prices deliberately set to undercut Orbit's prices, using Trade Secret information stolen from Orbit. It was part of the scheme and artifice to defraud that:

        a.      The defendants established a company, SUNHILLS, to act as a distribution and marketing operation for the scheme. Augusta also operated in this capacity at times. HONGCHEN would "float" – provide upfront for free – irrigation and sprinkler products to SUNHILLS to market to U.S. retailers.

        b.      The defendants took steps to begin undermining Orbit's position in the marketplace. Among those steps was an anonymous complaint to Wal-Mart about conditions at Orbit's factory in Ningbo. Another step was for HONGCHEN to raise Orbit's manufacturing costs, despite agreements to the

contrary. Because of the dispute over the price increases, the defendants filed a complaint with a state-run Chinese insurance company, resulting in a temporary "blackballing" of Orbit among other Chinese manufacturers.

    c.  Manufacturing and cost information shared between Orbit and HONGCHEN was used and shared among the conspirators by LUO JUN and HONGCHEN in contravention of confidentiality agreements with Orbit. Such information was used to set prices in marketing to Orbit's customers and begin pricing Orbit out of the market.

    d.  Customer and pricing information, illegally possessed by CAPENER as set forth in paragraph 12 above, was used in contravention of her confidentiality agreement with Orbit, and was shared among co-conspirators as part of their marketing efforts to U.S. retailers. The defendants used Orbit's proprietary information to solicit business from Orbit's customers at prices below what Orbit offered – sometimes marketing the exact same products that the HONGCHEN factory manufactured for Orbit.

   B.  THE USE OF WIRE COMMUNICATIONS FOR THE PURPOSE OF EXECUTING THE SCHEME AND ARTIFICE TO DEFRAUD

17.     Between about January of 2010 and about July of 2010, for the purpose of executing the scheme and artifice described herein, the defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, and sounds including, but not limited to, the following:

        a.     Emails between and among the defendants and others establishing business relationships in order to further the scheme and artifice;

        b.     Emails between and among the defendants and others sharing the proprietary cost, customer, and pricing information of Orbit;

        c.     Emails between and among the defendants and others arranging to undercut Orbit's prices by marketing products to Orbit customers at dramatically lower prices than Orbit's;

all in violation of 18 U.S.C. §1349.

## COUNTS 7-18
(18 U.S.C. §1343, Wire Fraud)

18.     The Grand Jury hereby incorporates and realleges paragraphs 1-11 and 15-17 above.

19.     On or about the dates set forth below, in the Northern Division of the

District of Utah and elsewhere,

JANICE KUANG CAPENER,
LUO JUN,
SUNHILLS INTERNATIONAL, INC., and
ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD.,

defendants herein, having devised and intending to devise a scheme and artifice to

defraud, and for obtaining money and property by means of false and fraudulent

pretenses, to wit: the enrichment of the defendants, their associates, and related

companies from the sale of goods to customers of Orbit at prices well below

Orbit's prices and devised using Orbit's illegally-possessed, proprietary pricing

information, for the purpose of executing such scheme and artifice did knowingly

transmit and cause to be transmitted by means of wire communication in interstate

commerce writings, signs, signals and sounds:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 7 | 1/19/2010 (latest in chain) | Email chain between CAPENER and C. C. in which the parties discuss C. C.'s sales pitch to Home Depot and cite information obtained from Orbit's trade secret sales and customer data. |
|  | 1/21/2010 (latest in | Email chain between C. C. and a Home Depot purchasing representative in which the parties discuss |

| 8 | chain) | C. C.'s sales pitch to Home Depot and cite information obtained from Orbit's trade secret sales and customer data. |
|---|---|---|
| 9 | 2/15/2010 (latest in chain) | Email chain between CAPENER and C. C. in which sales information from Orbit to Sear's and Ranch & Home Supplies is discussed, including discussion of undercutting Orbit's prices |
| 10 | 4/12/2010 (latest in chain) | Email chain between CAPENER and C. C., including an email from CAPENER to C. C. reporting that Orbit would be going to HONGCHEN to obtain new products to sell to Lowe's |
| 11 | 4/21/2010 | Email from CAPENER to C. C. discussing Wal-Mart's audit of Orbit's Ningbo factory and how it might be exploited by the defendants |
| 12 | 5/4/2010 (latest in chain) | Email chain between CAPENER and C. C. discussing a sales pitch to Orchard Supply Hardware and the products Orbit ("the trading company") sells to Orchard and the costs to Orbit of the products in question |
| 13 | 5/19/2010 | Email from CAPENER to C. C. discussing finalization of a sales presentation to Lowe's and the use of Orbit's confidential purchasing-cost information and Orbit's proprietary customer-pricing information to set the prices for the defendant's presentation |
| 14 | 6/8/2010 | Email from CAPENER to C. C. discussing the product "port-a-rain" and the purchasing costs and pricing of Orbit for the same item |
| 15 | 6/25/2010 (latest in chain) | Email chain among CAPENER, C. C., and a third party discussing a mock-up of a product and the necessity of removing the name "Orbit" from the image |

| 16 | 6/28/2010 | Email from CAPENER to C. C. discussing prices the defendants can offer in comparison to those Orbit can offer, and Orbit's confidential purchasing cost |
| 17 | 7/6/2010 | Email from CAPENER to C. C. discussing factory certification of Orbit's factory by Lowe's, with Lowe's audit report attached |
| 18 | 7/27/2010 | Email from HONGCHEN representative W. W. to a Home Depot representative discussing LUO JUN's plans to attend a line-review meeting, and soliciting Home Depot's business |

all in violation of 18 U.S.C. §1343.

A TRUE BILL:

/S/

_____
FOREPERSON OF THE GRAND JURY


DAVID B. BARLOW
United States Attorney


_____
ADAM S. ELGGREN
Assistant United States Attorney


-14-